SOUTHWESTERN STATES GENERAL CORPORATION, Presently Keystone Financial Corporation, Keystone Life Insurance Company of Texas, John P. Gutschlag, Ellison Miles, and E.K. Norton, Jr., Appellants,

v.

Billy E. McKENZIE, Appellee.

No. 05–83–00698–CV.

Court of Appeals of Texas, Dallas.

Sept. 22, 1983.

al judge in lieu of a supersedeas bond. These arrangements were designed to permit appellants to supersede under Tex.R. Civ.P. 364(a), a money judgment against them by an alternate method specified in Tex.R.Civ.P. 14c, that is, by deposit of a negotiable obligation of a bank. With the exception of one independent feature, likely correctable, we hold these arrangements to be sufficient. We, therefore, allow appellants twenty days to correct the deficiency before our order striking the arrangement and permitting the execution of the judgment becomes effective.

Appellee, McKenzie, recovered judgment jointly and severally against appellants, Southwestern States General Corporation (now Keystone Financial Corporation), John P. Gutschlag, Ellison Miles, and E.K. Norton, Jr. for: (a) the sum of $800,000; plus (b) the sum of $62,273.22, as interest on $800,000 at the rate of 7% per annum from January 31, 1979 to March 12, 1980; plus (c) interest on the total of $862,273.22 at the rate of 10% per annum from March 12, 1980 until paid; plus (d) attorneys fees of $200,-000; plus (e) interest on the $200,000 attorneys fees at the legal rate of 9% per annum from the date of judgment until paid; plus (f) court costs.

As of May 26, 1983, while a motion by all appellants for "Leave to File Negotiable Obligation in Lieu of Supersedeas Bond" was under consideration by the trial court, the money damages owed (including interest) amounted to $1,142,511.90, and the attorneys fees owed (including interest) amounted to $213,152.37. The face amounts of two certificates of deposit appearing in the record are for such sums. Also, on their face these CD's show their type to be "Negotiable", the issuer to be Mercantile National Bank at Dallas, the purchaser to be Keystone Financial Corporation, the original payee to be Billy E. McKenzie, the original term to be thirty days, and the rate of interest to be 10% on the larger amount and 9% on the smaller amount. The trial judge, pursuant to Rules 14c and 364, granted leave to all appellants to file the originals of these CD's with the

Emil Lippe, Jr., David C. Musslewhite, Ruth Abboud Cross, G. Leroy Street, Dallas, for appellants.

O. Glenn Weaver, Deathrage & Weaver, Dallas, for appellee.

Before STOREY, WHITHAM and ROWE, JJ.

ROWE, Justice.

By original motion filed in this court, appellee seeks to review the sufficiency of certain arrangements authorized by the tri-

district clerk of Dallas County, and ordered the CD's to be renewed automatically every 30 days, with earned interest to be paid to the district clerk at the end of each 30 day period. The district clerk acknowledged receipt of these CD's. The trial judge's order further provided:

3) pending further order of this court following final disposition of the appeal of this case, the district clerk of Dallas County, Texas shall receive and hold both certificates of deposit, and shall receive the interest paid on both certificates of deposit and deposit and hold such interest in an interest bearing account.

4) Upon compliance with this order plaintiffs will have satisfied the requirements of rule 14c and 364, Texas Rules of Civil Procedure.

■ In opposition to the trial court's order, which was entered over thirty days after the overruling of appellant's new trial motion, McKenzie contends that the trial court was then without jurisdiction. We disagree. The motion was filed and brought to the trial court's attention *within* thirty days from the overruling of the motion for new trial; so the trial court was required to act on it. *Sams v. Coker,* 514 S.W.2d 351 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). The fact that this court had acquired jurisdiction of the appeal did not diminish the trial court's continuing jurisdiction to fix a supersedeas bond. *Cashion v. Cashion,* 239 S.W.2d 742 (Tex.Civ.App.—Waco 1951, no writ). *See also Hughes v. Thornton,* 320 S.W.2d 191 (Tex.Civ.App.—Dallas 1958, no writ). Indeed, this court recently indicated that, at least in a Rule 14c case such as this, an applicant must properly first seek leave of the trial court. *Heritage Housing Corporation v. Ferguson,* 651 S.W.2d 272 (Tex.App. —Dallas 1983, no writ). The trial court's *order was properly entered.*

■ McKenzie further complains that the trial court's order fails to provide for joint and several liability of all appellants as required by *Fortune v. McElhenney,* 645 S.W.2d 934 (Tex.App.—Austin 1983, no writ), and fails to adequately provide for post judgment interest as required by such cases as *Kennesaw Life and Accident Ins. Co. v. Streetman,* 644 S.W.2d 915 (Tex.App. —Austin 1983, no writ). Again, we disagree, finding that the trial court's order effectively incorporates all the pertinent provisions of Rules 14c and 364 required by these cases. Because the motion acted on by the trial court was presented in the behalf of and was granted in favor of all appellants, the liability is made thereby joint and several. To the extent the CD's are renewed periodically as provided in the order, the interest payable on them will exactly parallel the amount required by the judgment. To the extent the district clerk receives the interest and reinvests it in an interest bearing account, the amount in his hands at any time will actually exceed what is required. Any potential forfeiture of interest can easily be avoided (and presumably will be avoided) by appropriate action of the trial court in its final order of distribution after the appeal is concluded.

■ Because we read Rule 14c as requiring no more than that the issuing bank will be one whose deposits are insured by an agency of the United States government, and because we can take judicial notice that Mercantile Bank at Dallas is so insured, we hold McKenzie's complaints about the adequacy of insurance to be without merit. The one complaint of McKenzie which does have merit is the matter concerning the nonparty status of the issuing bank. To bring the trial court's arrangement into compliance with applicable rules, the issuing bank must: (1) automatically renew each 30-day CD at its original interest rate; (2) remit the earned interest promptly to the district clerk; and (3) continue doing both (1) and (2) pending further order of the trial court following final disposition of the appeal. (Of course, the bank must also honor the CD's when they are properly endorsed and presented for payment, but we foresee no greater difficulty in their collection than would obtain otherwise as to a surety company under a surety bond. Having issued its negotiable obligation in form payable to the judgment creditor and hav-

ing delivered it with knowledge of the use intended, the bank would be liable thereon to the judgment creditor despite any third party defenses.) Recognizing the need for commitments such as these by the issuing bank, the trial court accepted a letter from that bank. While we agree that for Rule 14c to have any practical utility these commitments must be evidenced in some fashion such as a written collateral undertaking by the issuing bank, the letter in question falls short of being acceptable. A proper letter should be addressed *to the trial court,* as well as to the appellee, and should refer to the style and number of the cause, referenced to the "Order of June 3, 1983, Approving the Deposit of Negotiable Obligations in Lieu of a Supersedeas Bond." Each of the above recited three components must be specifically incorporated as contractual undertakings by the bank, and the letter must be executed by an authorized bank official (without ambiguous references to nonbanking functions such as appear in this record through inclusion of the words "Metroplex Insurance" after the officer's title). Further, to avoid ambiguity, the bank's letter should specify it supersedes all agreements previously made in the matter.

Unless this court within twenty days from date of issuance of this opinion receives a certificate from the trial judge that a letter from Mercantile National Bank at Dallas of the calibre specified above has been filed in the cause, the motion to declare the deposit in lieu of supersedeas bond insufficient is granted, and appellee may proceed with execution of his judgment.

WHITHAM, Justice, dissenting.

I respectfully dissent. I would grant McKenzie's motion to determine sufficiency of deposit in lieu of supersedeas bond.

Tex.R.Civ.P. 14c provides:

Wherever these rules provide for the filing of a surety bond, the party may in lieu of filing the bond deposit cash or other negotiable obligation of the government of the United States of America or any agency thereof, or with leave of court, deposit a negotiable obligation of any bank or savings and loan association chartered by the government of the United States of America or any state thereof that is insured by the government of the United States of America or any agency thereof, in the amount fixed for the surety bond, conditioned in the same manner as would be a surety bond for the protection of other parties. Any interest thereon shall constitute a part of the deposit.

I cannot agree that under the facts of the present case the two certificates of deposit constitute a "negotiable obligation of any bank ... chartered by the government of the United States ... that is insured by the government of the United States ... or any agency thereof" within the meaning and provisions of Rule 14c. I reach this conclusion for two reasons. First, under the facts of the present case, the majority relies on form over substance and thereby denies McKenzie protection from the insolvency of the appellants. Second, only $100,000.00 of the $1,355,664.24 can possibly be insured and even that insured amount cannot be ascertained on this record.

First, let us consider just what it is that Keystone has deposited in lieu of supersedeas bond. At oral argument Keystone admitted that this manner of deposit in lieu of surety bond was dictated by interest rate economic considerations in that Keystone borrowed the amount of the two certificates of deposit from the bank and obtained a lower rate of interest by leaving the borrowed monies on deposit through the certificates of deposit. Thus, appellants borrowed $1,355,664.27 from the bank, deposited that sum with the bank in the name of McKenzie and filed evidence of that deposit with the district clerk. Stripped of the form relied on by the majority we have, in substance, a judgment superseded by a bank loan made to the judgment debtor.

The courts have held certain types of supersedeas bonds and sureties to be insufficient security. *Cf. Phelan v. Settle,* 431 S.W.2d 376, 377 (Tex.Civ.App.—Amarillo 1968, no writ) (only property owned by sureties was that designated as homestead and was not subject to execution); *United Em-*

*ployers Casualty Co. v. Daniels,* 133 S.W.2d 599, 600 (Tex.Civ.App.—Beaumont 1939, no writ) (appellant used same sureties on several other pending cases besides the present case and sureties were financially unable to discharge obligations under the bonds should they become fixed liabilities); *Elliott v. Lester,* 126 S.W.2d 756, 759 (Tex.Civ.App. —Dallas 1939, no writ) (motor carrier's liability insurer which participated in defense of suit against carrier could not act as surety as insurer was already responsible for the debt and no additional security other than the solvency of the principal obligor would be given).

In my view the arrangement approved by the majority affords McKenzie insufficient security in the present case. Assuming the judgment is ultimately affirmed, then under this arrangement, McKenzie can collect his judgment on the day it must be satisfied only if the bank is willing on that future day to lend Keystone $1,355,664.27 for the purpose of satisfying the judgment. Therefore, I cannot accept the argument that the arrangement approved by the majority is appropriate under Tex.R.Civ.P. 14c. The majority treats this arrangement as the same as though appellants purchased the certificates of deposit with non-borrowed cash on hand. I cannot agree with that interpretation.

In the present case, the majority ignores reality and sees only the form of two certificates of deposit payable to McKenzie held by the district clerk. In my view, the majority takes a naive approach to the matter when it tells us in a parenthetical expression that "[o]f course, the bank must also honor the CD's when they are properly endorsed and presented for payment, but we foresee no greater difficulty in their collection than would obtain otherwise as to a surety company under a surety bond." To the contrary, I see a much greater difficulty in satisfying the judgment under the arrangement approved by the majority than would be the case under a surety bond. That difficulty lies in the relationship between Keystone and the bank on the day that the judgment must be satisfied. In my view it defies logic and common sense

to believe that the bank will part with its money on the certificates of deposit on the day that the judgment must be satisfied without regard to the wishes and financial circumstances of Keystone. If Keystone refuses to consent, then on that day the bank will not pay. If Keystone's financial condition does not justify a loan, then on that day the bank will not pay. If Keystone's other creditors or its trustee in bankruptcy are making ominous sounds, then on that day the bank will not pay. These would be the legitimate concerns of any reputable bank. Such difficulties would not exist in the case where a surety company has executed supersedeas bond.

The purpose of the supersedeas bond is to protect against insolvency resulting from affirmance of the judgment. *United Employers Casualty Co.,* 133 S.W.2d at 600. In the present case the insolvency of Keystone resulting from affirmance of the judgment would as a practical matter cause the bank to refuse to pay. No banker in his right mind is going to lend an insolvent borrower $1,355,664.27 in order to satisfy a judgment. Thus, I cannot agree to treat the arrangement before us in the present case as a deposit of negotiable obligations of a bank. Rather, supersedeas by bank loan is an obvious and open invitation for future litigation. The owner of a judgment is entitled to more security from supersedeas than that. In my view McKenzie ought not to be put at risk in order that Keystone might have a lower rate of interest. Given Keystone's obvious ability at this time to borrow $1,355,664.27 this court should afford Keystone the opportunity to pay the higher rate of interest, deposit cash in lieu of bond with the district clerk and thus eliminate the needless risk which the majority now imposes upon McKenzie. This court should not deny McKenzie his protection in order to spare Keystone from a higher rate of interest.

Second, let us consider if the certificates of deposit are insured. The record is silent as to whether the bank is a member of the Federal Deposit Insurance Corporation. Although the majority does not say what

agency of the United States government it judicially notices to have insured the bank, I assume it judicially notices the Federal Deposit Insurance Corporation. For the purposes of this dissent, I assume but do not decide, that the bank is an "insured bank" as defined in 12 U.S.C.A. § 1813(h) (1980); [1] however, I do not join in the majority's holding that "[b]ecause we read Rule 14c as requiring no more than that the issuing bank will be one whose deposits are insured by an agency of the United States government, and because we can take judicial notice that Mercantile Bank at Dallas is so insured, we hold McKenzie's complaints about the adequacy of insurance to be without merit."

The majority interprets Rule 14c to require only that the bank be one whose deposits are insured by an agency of the United States government. I cannot agree with that interpretation. I read Rule 14c to provide that the negotiable obligation of the bank be insured by the government of the United States or an agency thereof. The specific obligation itself must be so insured, not merely the issuing bank. Given the structure of the insurance provided under the Federal Deposit Insurance Corporation I cannot see that on this record that the majority's interpretation of Rule 14c affords the judgment creditor any protection by requiring only the issuing bank to be insured. In the end Federal Deposit Insurance Corporation coverage insures depositors not banking institutions. Moreover, neither the depositor nor the certificates of deposit are insured in the amount of $1,355,664.27 in the present case.

In my view Rule 14c requires that the two specific certificates of deposit be insured. In my view the two certificates of deposit are not insured by an agency of the government of the United States, i.e. the Federal Deposit Insurance Corporation. 12 U.S.C.A. § 1821(a)(1) (1980) provides that "[t]he maximum amount of the insured deposit of any depositor shall be $100,000."

An "insured deposit" is defined in 12 U.S.C.A. § 1813(m)(1) (West Supp.1983) as "the net amount due to any depositor ... for deposits in an insured bank (after deducting offsets) less any part thereof which is in excess of $100,000." In determining "the amount due to any depositor there shall be added together all deposits in the bank maintained in the same capacity and the same right for his benefit in his own name or in the names of others ...." The Code of Federal Regulations states that "[f]unds owned by an individual ... and deposited in one or more deposit accounts in his own name shall be insured up to $100,000 in the aggregate." 12 C.F.R. § 330.2 (1982).

Under these provisions the two certificates of deposit are not themselves insured. Only the deposit of funds they evidence are insured and then only up to $100,000 at the maximum. Moreover, under these provisions the deposit of funds evidenced by the two certificates of deposit will not be insured even in the amount of $100,000 in the event Keystone is the depositor and, at the time the amount of insurance coverage is to be determined, has other deposits in the bank. The record is silent as to the existence of other accounts of Keystone with the bank that might be included in calculating "the amount due to any depositor" and thus affect a claim on the insurance proceeds. Moreover, the arrangement approved by the majority makes no provisions to make certain that Keystone does not further destroy the insured nature of all or any part of the $1,355,664.27 by opening other accounts with the bank which will be included in calculating "the amount due to any depositor" and thus affect a claim on the insurance proceeds.

Therefore, in my view the certificates of deposit are not fully insured in their face amount of $1,355.664.27. The most that can be said is that the deposit of funds represented by the two certificates may be insured in the amount of $100,000; however,

---

1. The term "insured bank" means any bank (including a foreign bank having an insured branch) the deposits of which are insured in accordance with the provisions of this chapter; and the term "noninsured bank" means any bank the deposits of which are not so insured. 12 U.S.C.A. § 1813(h) (1980).

it cannot be said with certainty that these deposits are insured even in that small amount. I simply cannot agree that Rule 14c is to be interpreted as to make meaningless the phrase "negotiable obligation of any bank ... insured by the government of the United States of America or any agency thereof."

For these reasons, I would grant McKenzie's motion to determine sufficiency of deposit in lieu of supersedeas bond and allow appellants twenty days from the date of issuance of this court's opinion to file with our clerk a proper supersedeas bond or to make a deposit in lieu thereof in the trial court and file a copy of the certificate with our clerk in compliance with the applicable rules of civil procedure. See Tex.R.Civ.P. 365, 366.

